UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20622-CIV-GOLD/DUBÉ

KARINA OSORIO,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #14) and the Motion for Summary Judgment filed by the Defendant (D.E. #23) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Karina Osorio (hereinafter "Osorio" or "Plaintiff").

### I. FACTS

Osorio filed an application for supplemental security income on August 23, 2006.[1] (R. 84-92). The application, which asserted disability as of August 1, 2006, was denied initially and on reconsideration. (R. 57-67). Following a hearing on September 18, 2007 (R. 34-56), the ALJ issued a decision denying the request for benefits. (R. 18-33). A request for review filed with the Appeals Council was denied. (R. 1-4).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, age 48 at the time of the hearing on September 18, 2007, testified she lives with two of her adult children and has not worked since August 2006. (R. 38). Osorio stated she went through the sixth grade which she did not complete. Additionally, she stated that her prior job was taking care of two young children and she stopped working because she had an epilepsy attack. (R. 39). The Plaintiff further stated that her job duties involved watching, feeding and changing the children. Osorio added she did not lift or carry the children at the mother's instructions. The Plaintiff testified that in 2003 or 2004 she worked part-time as a telemarketer. (R. 40).

According to the Plaintiff, while working part-time as a telemarketer she also worked cleaning houses. The Plaintiff testified she sat 4-5 hours a day while working as a telemarketer and only stood during 30 minutes breaks. She worked 4-5 hours a day, 6 days a week. (R. 41). The Plaintiff further stated she cleaned houses in the morning and worked as a telemarketer in the afternoons. The Plaintiff added she worked cleaning houses for 3 months. Osorio testified she cannot work because no one will hire her once they find out about her epilepsy problem. (R. 42). The Plaintiff added she had been hired for a job and within two hours of beginning to work, she had an attack and was told she couldn't continue working. Osorio testified that she has been having epilepsy attacks since she was 15 years old. (R. 43).

The Plaintiff stated when she was previously married her ex-husband paid for her medications. She added that since she separated 15 years ago, she does not receive assistance from anyone. (R. 44). Osorio testified that on the Monday before the hearing she was hospitalized because she was experiencing very strong depression and she wanted to kill herself. Osorio further stated that as a result of the depression she becomes aggressive and desperate, sees things, has crying spells and cannot eat or sleep. (R. 45). The Plaintiff testified she takes medication for the depression and has had problems sleeping for a long time. Additionally, the Plaintiff stated she has been having problems

2

with depression since 1994 when she started hearing voices and seeing things. She testified that the voices would tell her to kill herself and other people, and that she was worthless. Osorio further testified she was eating more before her hospitalization. (R. 46). The Plaintiff said she has problems with her concentration as she will put something away but later forget where she put it. Additionally, since 1992, she's had problems with migraine headaches for which she takes Tylenol. The Plaintiff described the migraine headaches as follows:

> Four or five days, my headaches like going to explode, I get fevers, vomiting, cold or chill. I experience the migraine headaches like they're going to take away my eyes, my vision and my head hurt. I do, I don't receive the light, I like to be in the dark.

(R. 47).

The Plaintiff stated she has all her medications because her son buys them for her. (R. 48). Osorio testified she could not have attended the hearing without her medications. She added that with her medications she feels more relaxed but without the medications, "I feel agitated. First I feel like, like a slow person, then I become very aggressive and throw things around and grab something by the hair." (R. 49). The Plaintiff also stated that she is "gravely ill" because of nerves, migraine headaches and her epilepsy condition. According to the Plaintiff, she sees people running around with music, a baby fussing or someone taking a shower. She added that it occurs all the time and she needs to sleep with the light on. Osorio said she can only stand for a short period of time before she needs to sit down because she feels weak. She added that she does not have problems sitting but does have problems walking because of lateral leg pain. (R. 50). The Plaintiff testified she has had the leg problem for about four years although she was not sure what caused it. (R. 51).

According to the Plaintiff, she does not do any lifting and does not watch television. She also stated that she reads a little and does not use a computer. Osorio testified she spends her day

coloring and moving things from one place to another. She also testified that she does not drink alcohol. The Plaintiff further testified that she has left the house in the past and has been unable to find her way back. Additionally, the Plaintiff stated she cannot take a shower if her son is not there because she is afraid she might have a seizure. (R. 52). The Plaintiff further stated she has a driver's license although she does not drive. (R. 53).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. A review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

On October 18, 2007, the ALJ issued a decision finding that the Plaintiff suffered from depression. The ALJ also found that while the Plaintiff alleged a history of seizures and migraine headaches, the treatment records did not evidence same. (R. 26). The ALJ further found that the Plaintiff did not have an impairment or combination of impairment that meets or medically equaled a listed impairment. The ALJ determined that the Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels and the Plaintiff would be able to perform the basic mental demands of unskilled work. (R. 27). Additionally, the ALJ found that the Plaintiff could not perform her past relevant work. However, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, there were other jobs which existed in significant numbers in the national economy that the Plaintiff could perform. (R. 32). As such, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Regulations. (R. 33).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient

reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The Plaintiff's first point of contention is that the ALJ failed to accord adequate weight to the opinion of the Plaintiff's treating physician.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004). This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996).

On October 16, 2006, Dr. Mendez-Villamil opined that the Plaintiff was unable to work or study as a result of major depressive disorder, recurrent and severe with psychosis. (R. 176). On March 27, 2007, Dr. Mendez-Villamil completed a Psychiatric and Psychological Evaluation. (R. 240-251). The Evaluation noted that Dr. Mendez-Villamil treated the Plaintiff every month for 9 months for major depressive disorder, recurrent, severe and assigned a GAF of 44. (R. 240). Dr. Mendez-Villamil further opined that the Plaintiff had marked restrictions in the areas of activities of daily living; difficulties in maintaining social functioning; and deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere). (R. 242). Additionally, Dr. Mendez-Villamil opined that the Plaintiff experienced 4 or more repeated episodes of deterioration or decompensation in work or work like settings which

7

cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). (R. 243). With regard to said Evaluation, the ALJ stated as follows:

> I reject these statements and accord them little weight as they are internally inconsistent with his treatment notes and are not supported by the record. First, Dr. Mendez-Villamil's own treatment notes documented no decompensation episodes. Further, Dr. Mendez-Villamil's findings consistently reflect impaired memory and concentration findings, but not to a marked extent. However, his notes did not reflect marked restrictions in all Criteria B areas, as the record is devoid of references to the claimant's ability to perform activities of daily living, or to function socially.

(R. 30). The ALJ further stated that the opinion of Dr. Mendez-Villamil was accorded little weight as it was based heavily on the Plaintiff's self-reports. (R. 31). A review of Dr. Mendez-Villamil's progress notes reveal that while the Plaintiff's diagnosis was consistently revealed as depression, his examinations routinely found that the Plaintiff had good insight and judgment and Dr. Mendez-Villamil found that the Plaintiff could care for herself. (R. 215-217, 238-239). Additionally, after an emergency room visit at Cedars Hospital, progress notes revealed that the Plaintiff was oriented as to time, place and person, and the Plaintiff denied feelings of depression and anxiety. The Plaintiff also denied having suicidal or homicidal ideations, her affect was appropriate and she showed good judgment. (R. 258). A further review of Dr. Mendez-Villamil's progress notes does not demonstrate the degree of marked limitation referenced in his assessment. (R. 252, 515-521). While the Plaintiff contends that the ALJ improperly rejected the treating physician's opinion, the Plaintiff does not show any evidence in the record which supports such extreme limitations as placed by Dr. Mendez-Villamil.

In the instant matter, the Court finds that the ALJ's decision to give the treating physician's opinion little weight is supported by substantial evidence as Dr. Mendez-Villamil's own treatment

notes do not support such an extreme finding nor does the record as a whole. Additionally, the ALJ specifically stated the reasons for assigning Dr. Mendez-Villamil's opinion little weight as is required by the regulations and the Eleventh Circuit.

The Plaintiff's second point of contention is that the ALJ erred in placing more weight on the report of a one-time consultative psychologist than on the report of the Plaintiff's treating physician. The Plaintiff contends that the report prepared by Dr. Rene Rocha should not have been used because it was unclear and non-conclusory. However, as the Defendant correctly points out, the ALJ's analysis of the consultative examination was used for two reasons. First, was during the credibility analysis. The ALJ stated as follows:

> Of particular interest to this case was the November 13, 2006 State Agency Administration-sponsored psychological evaluation by Rene Rocha, Ph.D. (4F). In sharp contrast to the claimant's behavior with Dr. Mendez-Villamil, the claimant presented to this interview appropriately dressed and well groomed, accompanied by a friend. The claimant reiterated she had stopped working in August 2006 (4F/2). Whereas before the claimant alleged inability to work since August 2006 due to epilepsy, this time she indicated she had been actively seeking work for sometime (Id.). This admission strongly suggests that the only reason she did not work was because she had been unable to find work, not due to disability (4F/2).

(R. 29). Additionally, as the Defendant points out, despite finding that the Plaintiff's cooperation was poor, Dr. Rocha still found that the Plaintiff suffered from mild limitations by assigning a GAF of 65. (R. 188-189). The ALJ correctly pointed out, the findings of Dr. Rocha were in fact consistent with the other medical evidence of record such as the treating physician's treatment notes. Accordingly, as the ALJ properly rejected the opinion of the Plaintiff's treating physician, and properly referred to all the evidence of record in determining the Plaintiff's RFC, it is the opinion of this Court that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #14) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #23) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Alan S. Gold, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 18 day of November, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

10